TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MARK P. TAKLA
Assistant United States Attorney
Chief, Orange County Office
KRISTIN N. SPENCER (Cal Bar. No. 294692)
MELISSA S. RABBANI (Cal. Bar No. 283993)
Assistant United States Attorneys
    U.S. ATTORNEY'S OFFICE
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3500
    Facsimile: (714) 338-3561
    E-mail:    kristin.spencer@usdoj.gov
            melissa.rabbani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>        v.<br><br>JAMAL NATHAN DAWOOD,<br>  aka "Jimmy Dawood,"<br><br>      Defendant. | No. SA CR 23-38-JVS<br><br><u>GOVERNMENT'S SENTENCING POSITION</u><br><br>Hearing Date:  March 9, 2026<br>Hearing Time:  9:00 a.m. |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kristin Spencer and Melissa Rabbani, hereby files its sentencing position for defendant Jamal Nathan Dawood.

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report filed on October 27, 2025, the objections to the Presentence Report filed by the government on November 10, 2025, and such further evidence and argument as the Court may wish to consider at the time of sentencing.

Dated: February 23, 2026                Respectfully submitted,

                                        /s/ *Melissa S. Rabbani*
                                        KRISTIN N. SPENCER
                                        MELISSA S. RABBANI
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

In 2019, defendant Jamal Nathan Dawood ("defendant") introduced himself to Thomas Battaglia following the death of Mr. Battaglia's brother.  Defendant told Mr. Battaglia that he was an expert in managing assets and that he would help Mr. Battaglia, who was in his late seventies at the time and facing his own health challenges, to manage his brother's estate, worth roughly $2 million.

Over the following months, defendant proceeded to steal nearly everything from the estate, transferring hundreds of thousands of dollars to his own bank accounts and transferring ownership of various real estate properties into LLCs defendant himself controlled.

Based on that conduct, defendant was charged with six counts of wire fraud, nine counts of money laundering, and one count of aggravated identity theft.  Last year, following a six-day jury trial, defendant was convicted of all 15 wire fraud and money laundering counts.

The United States Probation Office ("USPO") filed a Presentence Report on October 27, 2025.  Dkt. 178.  In its report, the USPO concluded that the total offense level in this case is 28 and that defendant is in criminal history category II, resulting in a Guidelines range of 87 to 108 months' imprisonment.  Id. at 4.  The USPO recommends that the Court impose a low-end sentence of 87 months' imprisonment, followed by a three-year period of supervised release; order defendant to pay restitution of $2,202,688; and impose a mandatory special assessment of $1,500.

As set forth below, the government believes that the total

offense level in this case is 32, rather than 28, and that the applicable Guidelines range is thus 135 to 168 months.  Based on defendant's personal history and characteristics, and the nature of the offense conduct in this case, the government respectfully recommends that the Court impose a high-end sentence of 168 months' custody, followed by a three-year period of supervised release, and impose the financial conditions recommended by the USPO in addition to a fine of $50,000.

The government believes this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II.   PRE-SENTENCE REPORT**

The USPO determined that the base offense level in this case is seven.  The USPO then applied a 16-level increase based on the loss amount at issue, a two-level increase based on defendant's use of "sophisticated means" to execute his fraud scheme, a one-level increase based on defendant's money laundering convictions under 18 U.S.C. § 1957, and a final two-level increase based on the vulnerability of the victim in this case.  Dkt. 178 at 9-11.

The USPO considered, but declined to recommend, a two-level adjustment for obstruction of justice.  Dkt. 178 at 11.

**III. THE GOVERNMENT'S POSITION**

The government agrees with the USPO's calculations except that, as explained in the government's objections filed on November 10, 2025, the government believes that two-level enhancements for obstruction of justice and abuse of a position of trust or skill should also apply.  See Dkt. 179.

Thus, the government believes that the total offense level in

this case is 32, rather than 28.  With a criminal history category of II, the government believes the applicable Guidelines range is 135 to 168 months, rather than 87 to 108 months.  For the reasons set forth below, the government respectfully recommends that the Court impose a high-end sentence of 168 months' imprisonment, followed by a three-year period of supervised release.

As noted in the PSR, defendant came to the United States as a young teenager, after a difficult and unstable childhood in Lebanon. Despite his challenging beginnings, defendant was apparently successful in his education and graduated from medical school in 1999.  Dkt. 178 at 20.

But instead of continuing to work towards a career in medicine, defendant apparently opted to chase higher returns through a different career track: fraud.  As noted in the PSR, only one year after he graduated from medical school, defendant was convicted in California state court of half a dozen fraud-related felonies, including identity theft, and was sentenced to 48 months in state prison.  Dkt. 178 at 13-14.

Those convictions and the sentence imposed apparently did little to deter defendant's criminal conduct.  As the jury in this case unanimously found, defendant stole roughly $2 million from Mr. Battaglia's brother's estate, repeatedly lying to Mr. Battaglia and assuring him that defendant was working in Mr. Battaglia's and the estate's best interests.  And as the testimony of several witnesses at trial made clear, defendant used much of the estate's money to fund separate "investments" that involved defendant taking advantage of other individuals in financially vulnerable positions.

When confronted by Mr. Battaglia, defendant continued to lie,

and he has steadfastly refused to accept responsibility for his conduct in this case.  Even more troublingly, defendant has willfully and repeatedly sought to obstruct the government's investigation and prosecution of this case: as detailed in the objections filed on November 10, 2025, defendant attempted to hide a box of critical documents from the FBI when a search warrant was executed at his home, produced forged and false documents to the government in the course of this case, and later introduced those forged and false documents into evidence at trial.  See Dkt. 179.

Defendant has made a career of targeting people in vulnerable situations, lying to earn their trust, and then taking as much money and property for himself as he can manage.  His prior felony convictions, and the substantial four-year sentence he received, did nothing to steer him away from that conduct; in fact, defendant appears to see no problem with his past conduct and appears doggedly committed to enriching or saving himself through lies and fraud.

The government respectfully submits that a significant prison sentence is warranted and necessary in this case based on defendant's history and characteristics and the nature of the offense conduct in this case.  In addition, a significant prison sentence will deter defendant and others from committing similar offenses in the future and will protect the public from further crimes by defendant.  See 18 U.S.C. § 3553(a).  Finally, the within-Guidelines sentence suggested by the government will avoid unwarranted sentence disparities among similarly-situated defendants.  See id.

**IV.   RESTITUTION AND FINE**

The USPO recommends that the Court order restitution of $2,202,688 to the Jack J Battaglia Trust, with an initial payment of

4

$70,000 to be made within six months of the date of sentencing.  The government agrees with the USPO's recommended restitution and proposed terms.

The USPO also recommends that no fine be imposed, explaining that it does not appear defendant will have the ability to pay a fine in addition to restitution.  Dkt. 178 at 24.  The government respectfully disagrees and recommends that the Court impose a $50,000 fine – towards the low end of the Guidelines range for the offenses of conviction.  See Dkt. 178 at 26; U.S.S.G. § 5E1.2(c)(3).  Given defendant's relatively low costs of living and multiple income streams, as well as the nature of the offense conduct in this case, the government submits that a fine is appropriate here.

**V.   CONCLUSION**

As set forth above, a sentence of 168 months' custody, to be followed by a three-year period of supervised release; restitution of $2,202,688; a fine of $50,000; and a mandatory special assessment of $1,500 is sufficient, but not greater than necessary, to punish defendant, promote respect for the law, deter defendant from committing similar crimes in the future, and avoid sentencing disparities.  See generally 18 U.S.C. § 3553(a).

5